IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

**JAIME S. ALFARO-GARCIA,**

     **Plaintiff,**

v.                          **Civil Action No. 3:15cv349**

**HENRICO COUNTY, et al.,**

     **Defendants.**

## MEMORANDUM OPINION

This matter comes before the Court on two motions to dismiss Plaintiff Jaime S. Alfaro-

Garcia's Complaint:  Defendant Henrico County's Motion to Dismiss (the "Henrico County

Motion to Dismiss"), (ECF No. 4); and, Sheriff Michael L. Wade's Motion to Dismiss (the

"Sheriff Wade Motion to Dismiss"), (ECF No. 6).  Both motions have been filed pursuant to

Federal Rule of Civil Procedure 12(b)(6).[1]  Alfaro-Garcia has responded to both motions to

dismiss, (ECF Nos. 9, 10), and both defendants have replied, (ECF Nos. 11, 12).  The Court

dispenses with oral argument because the materials before it adequately present the facts and

legal contentions, and argument would not aid the decisional process.[2]  The Court exercises

jurisdiction pursuant to 28 U.S.C. §§ 1331[3] and 1367.[4]

---

[1] Fed. R. Civ. P. 12(b)(6) allows a party to seek dismissal for "failure to state a claim upon which relief can be granted."

[2] Sheriff Wade requested a hearing on the Sheriff Wade Motion to Dismiss, (ECF No. 14), and Alfaro-Garcia requested a hearing on the Henrico County Motion to Dismiss, (ECF No. 19).  The Court will deny both motions for hearings.

[3] "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. The Complaint alleges Fourteenth and Fourth Amendment violations pursuant to 42 U.S.C. § 1983.

For the reasons that follow, the Court will: (1) grant the Henrico County Motion to Dismiss; and, (2) grant in part and deny in part the Sheriff Wade Motion to Dismiss.

## I. Federal Rule of Civil Procedure 12(b)(6) Standard

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *see also Martin*, 980 F.2d at 952. This principle applies only to factual allegations, however, and "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

The Federal Rules of Civil Procedure "require[ ] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (omission in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Plaintiffs cannot satisfy this standard with complaints containing only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* (citations omitted). Instead, a plaintiff must assert facts that rise above speculation and conceivability to those that "show" a

---

[4] The Court exercises supplemental jurisdiction over Alfaro-Garcia's false imprisonment claim pursuant to 28 U.S.C. § 1367(a) ("[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy . . . .").

claim that is "plausible on its face." *Iqbal*, 556 U.S. at 678–79 (citing *Twombly*, 550 U.S. at 570; Fed. R. Civ. P. 8(a)(2)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). Therefore, in order for a claim or complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (citations omitted).

"If, on a motion under Rule 12(b)(6) . . ., matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d); *see Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 260–61 (4th Cir. 1998); *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985). However, "a court may consider official public records, documents central to plaintiff's claim, and documents sufficiently referred to in the complaint [without converting a Rule 12(b)(6) motion into one for summary judgment] so long as the authenticity of these documents is not disputed." *Witthohn v. Fed. Ins. Co.*, 164 F. App'x 295, 396–97 (4th Cir. 2006) (citing *Alt. Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001); *Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 618 (4th Cir. 1999); *Gasner v. Cty. of Dinwiddie*, 162 F.R.D. 280, 282 (E.D. Va. 1995)).

Alfaro-Garcia attaches the following to his Response to the Henrico County Motion to Dismiss:  (1) the Henrico County Regional Cooperation Booklet for 2013, (Pl.'s Resp. to Henrico County Mot. Dismiss Ex. A, ECF No. 9–1); (2) a printout of the Henrico County Community Criminal Justice Board ("CCJB") website, (Pl.'s Resp. to Henrico County Mot.

Dismiss Ex. B, ECF No. 9–2); (3) the Annual Jail Revenues and Expenditure Report, (Pl.'s Resp. to Henrico County Mot. Dismiss Ex. C, ECF No. 9–3); (4) a special report titled the Criminal Alien Program:  Immigration Enforcement in Travis County, Texas, (Pl.'s Resp. to Henrico County Mot. Dismiss Ex. D, ECF No. 9–4); (5) Transactional Records Access Clearinghouse Immigration data for "ICE Detainers Issued for Facilities by Level of Most Serious Conviction," (Pl.'s Resp. to Henrico County Mot. Dismiss Ex. E, ECF No. 9–5); and, (6) an Advisory Opinion of the Office of the Attorney General of Virginia, dated January 5, 2015, (Pl.'s Resp. to Henrico County Mot. Dismiss Ex. F, ECF No. 9–6).  Alfaro-Garcia attaches to his Response to the Sheriff Wade Motion to Dismiss an outline from the Official Website of the Department of Homeland Security discussing its "Victim Notification Program."  (Pl.'s Resp. to Wade Mot. Dismiss Ex. A, ECF No. 10–1.)

Alfaro-Garcia did not reference these documents in the Complaint, and the documents generally do not pertain to allegations set forth therein.  As the Court will explain, while Henrico County does not dispute the authenticity of these exhibits, it takes issue with Alfaro-Garcia's reference to and reliance on these documents at this procedural stage.

## II. Procedural and Factual Background

### A.      Procedural Background

Alfaro-Garcia brings each count of his Complaint against each named defendant: Henrico County, Sheriff Wade, and John Does 1 through 10 (collectively, the "Defendants"). Alfaro-Garcia alleges three counts in his Complaint.  (ECF No. 1.)

4

Count I:    "Fourteenth Amendment[5] Violation – Due Process Violation; 42 U.S.C.
            § 1983[6]; Va. Const. art. 1, § 11" ("Due Process Claim").  (Compl. ¶¶ 29–31.)
            Alfaro-Garcia's Due Process Claim consists of three allegations:

    Count I.A:    The John Does followed a custom, practice, or policy when
            they misled Alfaro-Garcia and his family "regarding the
            possibility of pretrial release and advised against obtaining
            bail, even though [Alfaro-Garcia] was eligible for and had been
            awarded bail."  (Compl. ¶¶ 25, 29.)

    Count I.B:    Based on an immigration detainer request, the Defendants
            unlawfully detained Alfaro-Garcia after the resolution of his
            criminal case.  (Compl. ¶¶ 26, 30.)

    Count I.C:    The Defendants detained Alfaro-Garcia beyond the 48-hour
            period set forth in the immigration detainer request.  (Compl.
            ¶¶ 27, 31.)

Count II:    "Fourth Amendment[7] Violation – Unlawful Seizure; 42 U.S.C. § 1983; Va.
            Const. art. 1, § 10" ("Unlawful Seizure Claim").  (Compl. ¶¶ 32–34.)  Alfaro-
            Garcia's Unlawful Seizure Claim consists of three allegations:

    Count II.A:   The John Does followed a custom, practice, or policy when
            they "advised and instructed" Alfaro-Garcia "not to post bail

---

[5] The Fourteenth Amendment to the United States Constitution provides, in part:

No State shall make or enforce any law which shall abridge the privileges or
immunities of citizens of the United States; nor shall any State deprive any person
of life, liberty, or property, without due process of law; nor deny to any person
within its jurisdiction the equal protection of the laws.

U.S. Const. amend. XIV.

[6] Section 1983 provides a private right of action for a violation of constitutional rights by
persons acting under the color of state law.  42 U.S.C. § 1983.

[7] The Fourth Amendment to the United States Constitution provides:

The right of the people to be secure in their persons, houses, papers, and effects,
against unreasonable searches and seizures, shall not be violated, and no Warrants
shall issue, but upon probable cause, supported by Oath or affirmation, and
particularly describing the place to be searched, and the persons or things to be
seized.

U.S. Const. amend. IV.

for the state criminal charge, even though [he] was eligible." (Compl. ¶¶ 25, 32.)

Count II.B:   Based on the immigration detainer request, the Defendants detained Alfaro-Garcia for 48 hours "after every basis for detention under state law had expired." (Compl. ¶¶ 26, 33.)

Count II.C:   The Defendants held Alfaro-Garcia beyond the 48-hour period set forth in the immigration detainer request. (Compl. ¶¶ 27, 34.)

Count III:   "False Imprisonment" ("False Imprisonment Claim"). (Compl. ¶¶ 35–37.) Alfaro-Garcia's false imprisonment claim arises out of the John Does' recommendations that he not post bond and his purported detention in the absence of "any 'legal excuse.'" (Compl. ¶¶ 36–37.)

Henrico County has moved to dismiss Counts I and II against it on the basis that it "has no involvement in the facts underlying the case." (Mem. Law Supp. Mot. Dismiss ("Henrico County Mem. Supp.") 1, ECF No. 5.) Principally, Henrico County argues that Sheriff Wade alone "is legally responsible for operating the jail for Henrico County, Virginia." (*Id.*) Henrico County also has moved to dismiss Count III against it, claiming sovereign immunity. Alfaro-Garcia has responded to the Henrico County Motion to Dismiss, (ECF No. 9), and Henrico County has replied, (ECF No. 11).

Sheriff Wade has moved to dismiss all claims against him on the basis that he must be afforded either sovereign immunity, immunity under the Eleventh Amendment,[8] or qualified immunity. Sheriff Wade also contends that Alfaro-Garcia cannot establish supervisory liability against him nor has he "alleged facts sufficient to show that Sheriff Wade acted personally in the deprivation of his rights." (Mem. Law Supp. Mot. Dismiss ("Wade Mem. Supp.") 3–4, 10, ECF No. 7.) Finally, Sheriff Wade argues that Alfaro-Garcia fails to plausibly plead punitive

---

[8] The Eleventh Amendment to the United States Constitution provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI.

damages. Alfaro-Garcia has responded to the Sheriff Wade Motion to Dismiss, (ECF No. 10), and Wade has replied,[9] (ECF No. 12).

**B.      Summary of Allegations in the Complaint[10]**

On or about June 10, 2013, Alfaro-Garcia was lawfully arrested and detained at Henrico County Jail West. Following Alfaro-Garcia's arrest, the United States Department of Homeland Security (the "Department of Homeland Security") filed a "Form I-247, Immigration Detainer – Notice of Action." (Compl. ¶ 13.) Alfaro-Garcia alleges that, "[w]hen filed with a Law Enforcement Agency (LEA) such as Henrico County Jail West, Immigration Detainers request the LEA [to] maintain custody of a subject 'for a period NOT TO EXCEED 48 HOURS, excluding Saturdays, Sundays, and holidays, beyond the time when the subject would have otherwise been released.'" (*Id.* ¶ 14.)

On or about June 11, 2013, Alfaro-Garcia was formally charged and an unspecified court set his bail. Alfaro-Garcia and his family repeatedly inquired about the possibility of pre-trial release through bail, but John Does 1 through 7 suggested that posting bail would have no effect given the existence of the immigration detainer.[11] Alfaro-Garcia "resolved his criminal matter" at 9:30 a.m. on Wednesday, July 17, 2013. (Compl. ¶¶ 15, 17.) At that point, Alfaro-Garcia alleges, the 48-hour period stated in the immigration detainer was triggered and continued until

---

[9] Alfaro-Garcia moved to strike Sheriff Wade's Reply, (ECF No. 15), but that filing has since been withdrawn, (ECF No. 18). The Court will deny as moot the Motion to Strike Sheriff Wade's Reply.

[10] For purposes of a motion to dismiss, the Court will assume the well-pleaded factual allegations in the Complaint to be true and will view them in the light most favorable to Alfaro-Garcia. *Matkari*, 7 F.3d at 1134.

[11] The Complaint does not state whether Alfaro-Garcia had the assistance of an attorney at the time John Does 1 through 7 recommended that he not post bail. The Complaint's only mention of Alfaro-Garcia's counsel appears in the allegations pertaining to Alfaro-Garcia's ultimate release more than 30 days later. (*See* Compl. ¶ 20.)

its expiration on or about Friday, July 19, 2013, at 9:30 a.m. During the 48-hour period, the Defendants failed to provide Alfaro-Garcia with a copy of Form I-247 or to allow him an opportunity to challenge his detention on the basis of the immigration detainer.

Following the expiration of the 48-hour period, the Defendants continued to keep Alfaro-Garcia in custody. Counsel for Alfaro-Garcia arrived at Henrico County Jail West at some point in the evening of Friday, July 19, 2013, and requested that Alfaro-Garcia be released. John Does 8 and 9 refused to release Alfaro-Garcia and referred Alfaro-Garcia's counsel to John Doe 10, whom the Complaint identifies as a booking officer or manager. John Doe 10 acknowledged that Alfaro-Garcia was being held beyond the 48-hour period provided in the immigration detainer, but John Doe 10 refused to release Alfaro-Garcia absent authorization from the United States Immigration and Customs Enforcement ("ICE"). Subsequently, Alfaro-Garcia's counsel obtained authorization from ICE. Henrico County Jail West released Alfaro-Garcia between 11:30 p.m. on Friday, July 19, 2013, and 12:30 a.m. on Saturday, July 20, 2013, between 14 and 15 hours beyond expiration of the ICE detainer.

The Complaint alleges that the "Defendants have a policy, practice, or custom of misleading inmates regarding the opportunity to be released by posting bail, solely due to the existence of an immigration detainer request, notwithstanding that the court had set bail." (Compl. ¶ 25.) The Complaint further alleges that the Defendants "have a policy, practice, or custom of detaining certain inmates for an additional 48 hours after they would normally be released, . . . solely due to the existence of an immigration detainer request." (*Id.* ¶ 26.) According to Alfaro-Garcia's allegations, the Defendants also have a policy of detaining certain inmates beyond 48 hours even when "the immigration detainer has expired." (*Id.* ¶ 27.) As a result of the Defendants' actions, Alfaro-Garcia alleges that he "has suffered loss of liberty, loss

8

of enjoyment of life, humiliation, mental suffering, emotional distress, stress, and other non-economic losses." (*Id.* ¶ 28.)

### III. Analysis

Alfaro-Garcia brings Counts I, II, and III against each defendant, asserting his Due Process Claim under the Fourteenth Amendment, his Unlawful Seizure Claim under the Fourth Amendment, and his False Imprisonment Claim under state law. Both Henrico County and Sheriff Wade seek dismissal of all three counts, but on different grounds. Given the distinct arguments set forth by Henrico County and Sheriff Wade, the Court will address the viability of Alfaro-Garcia's Complaint separately for each defendant.

#### A.   Alfaro-Garcia Fails to State a Claim Upon Which Relief Can Be Granted Against Henrico County

In the Complaint, Alfaro-Garcia does not delineate, in a discernible fashion, the theories upon which municipal liability against Henrico County rests. Henrico County argues that it cannot be liable for either Alfaro-Garcia's Count I Due Process Claim or his Count II Unlawful Seizure Claim because Henrico County does not have responsibility for implementing policies and practices at Henrico County Jail West. With respect to Alfaro-Garcia's Count III False Imprisonment Claim, Henrico County argues that, as a subdivision of the Commonwealth of Virginia, it must be afforded immunity from tort liability. Having reviewed the Complaint, considering all theories of liability that Alfaro-Garcia may have raised, the Court finds that settled law supports both of Henrico County's arguments. For the reasons that follow, the Court will dismiss all claims against Henrico County.

9

1.    **The Court Will Dismiss Counts I and II Against Henrico County Because, Under Virginia Law, Henrico County Does Not Operate Henrico County Jail West**

Alfaro-Garcia brings his Count I Due Process Claim and his Count II Unlawful Seizure Claim under 42 U.S.C. § 1983. Section 1983 provides a private right of action for a violation of constitutional rights by persons acting under the color of state law. "Section 1983 . . . 'is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred' . . . . Hence, to establish liability under Section 1983, a plaintiff must show that the defendant, acting under color of law, violated the plaintiff's federal constitutional or statutory rights, and thereby caused the complained of injury." *Brown v. Mitchell*, 308 F. Supp. 2d 682, 692 (E.D. Va. 2004) (citations omitted).

When a plaintiff brings a § 1983 claim against a local government entity such as Henrico County, liability attaches only if that municipality undertakes "an official policy or custom" that "causes an unconstitutional deprivation of the plaintiff's rights." *Id.* (citing *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 694 (1978)). A policy or custom for which a municipality may be held liable can arise in four ways:

> (1) through an express policy, such as a written ordinance or regulation;
> (2) through the decisions of a person with final policymaking authority;
> (3) through an omission, such as a failure to properly train officers, that "manifest[s] deliberate indifference to the rights of citizens"; or[,] (4) through a practice that is so "persistent and widespread" as to constitute a "custom or usage with the force of law."

*Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003) (quoting *Carter v. Morris*, 164 F.3d 215, 217 (4th Cir. 1999)).

Henrico County argues that it cannot face liability for a policy or custom affecting Alfaro-Garcia's detention at Henrico County Jail West because Henrico County has no control over the facility's policies and practices. This position has merit. A county cannot be liable

under § 1983 for the actions of its sheriff in the administration of its jail because "under the law of Virginia those actions do not embody an official policy of the [county]."[12] *Strickler v. Waters*, 989 F.2d 1375, 1390 (4th Cir. 1993) (relying on Virginia cases addressing county liability to hold that the City of Richmond cannot face *Monell* liability for actions by the sheriff in administering the city jail); *see also Grayson v. Peed*, 195 F.3d 692, 697 (4th Cir. 1999) ("As the county has no control over policy within the jail, it bears no concomitant responsibility." (citing *Monell*, 436 U.S. at 694)); *Sleeper v. City of Richmond*, No. 3:12cv441, 2012 WL 3555412, at *8 (E.D. Va. Aug. 16, 2012) ("The [United States Court of Appeals for the] Fourth Circuit . . . has explicitly held that 'under Virginia law, the Sheriff has been granted independent authority to establish policies and procedures for the Sheriff's department.'" (quoting *Strickler*, 989 F.2d at 1390)).

In spite of this well-settled statement of Virginia law, Alfaro-Garcia offers three counterarguments. First, Alfaro-Garcia argues that "Henrico County has an express policy of cooperation with [ICE]." (Pl.'s Resp. to Henrico County Mot. Dismiss 6, ECF No. 9.) Second, Alfaro-Garcia turns to Virginia Code § 9.1-180,[13] contending that, through its CCJB, "Henrico

---

[12] "Authority to make municipal policy may be granted directly by a legislative enactment or may be delegated by an official who possesses such authority, and of course, whether an official had final policymaking authority is a question of state law." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986). Under Virginia law, sheriffs hold responsibility for the day-to-day operations and maintenance of jails. Va.Code § 53.1–116 *et seq.*

[13] Section 9.1-180 provides, in part:

On behalf of the counties, cities, or combinations thereof which they represent, the community criminal justice boards shall have the responsibility to:

1. Advise on the development and operation of local pretrial services and community-based probation services pursuant to §§ 19.2-152.2 and 9.1-176 for use by the courts in diverting offenders from local correctional facility placements;

County has policymaking authority over the availability of pretrial services and the release of inmates." (*Id.* at 7.)  And third, Alfaro-Garcia posits that Henrico County funds the enforcement of immigration detainer requests.  Ultimately, Alfaro-Garcia suggests that, with respect to immigration detainers, "it is reasonable to conclude that Henrico County knowingly provides funds for the enforcement of a 'practice that is so persistent and widespread as to constitute a custom or usage with the force of law.'"  (*Id.* at 10 (citing *Lytle*, 326 F.3d at 471).)  Each argument fails to persuade.

> a.  **Henrico County's "Express Policy" of Cooperating With ICE Does Not Provide a Basis for Municipal Liability**

Seeking to demonstrate municipal liability under the "express policy" category of *Monell*, Alfaro-Garcia contends that because Henrico County has an "express policy" of cooperating with ICE, the county can be held liable for constitutional violations arising out of the implementation of ICE policies.  In support of this theory, Alfaro-Garcia attaches to his response a "Regional Cooperation: May 2013" brochure that lists an "Immigration and Customs Enforcement (ICE) Agreement."  (Pl.'s Resp. to Henrico County Mot. Dismiss Ex. A, ECF No. 9-1.)  The brochure indicates that, as part of the agreement, the Henrico County Police Department "[p]articipates

---

> 2. Assist community agencies and organizations in establishing and modifying programs and services for defendants and offenders on the basis of an objective assessment of the community's needs and resources;
>
> 3. Evaluate and monitor community programs and pretrial and local community-based probation services and facilities to determine their impact on offenders;
>
>    . . . .
>
> 6. Facilitate local involvement and flexibility in responding to the problem of crime in their communities; and[,]
>
> 7. Do all things necessary or convenient to carry out the responsibilities expressly given in this article.

Va. Code § 9.1-180 (2016).

with the US Department of Immigration and Customs [sic] with immigrant status enforcement."
(*Id.* at 24.)  Further, "[t]he ICE Agreement allows [the Henrico County Police Department] to
cooperate with local, state and federal partners with such enforcement." (*Id.*)  Citing a federal
regulation addressing the issuance of immigration detainers, Alfaro-Garcia contends that Henrico
County's cooperation with local, state, and federal partners "generally manifests through the
enforcement of ICE Detainer requests." (Pl.'s Resp. to Henrico County Mot. Dismiss 6 (citing 8
C.F.R. § 287.7).)  Alfaro-Garcia's first argument fails.

First, Alfaro-Garcia relies on facts not set forth in the Complaint.  "When matters outside
the pleadings are presented in a response to a 12(b)(6) motion, a district court has discretion to
exclude the additional material." *Lawson v. Miles*, No. 1:11cv949, 2012 WL 3242349, at *4
(E.D. Va. Aug. 6, 2012) (citations omitted).  Nowhere in the Complaint does Alfaro-Garcia
allege that Henrico County faces liability because its police department cooperates with ICE on
immigration matters.  In light of this omission, the Court will exercise its discretion and exclude
the new factual allegations raised in Alfaro-Garcia's response.

However, even if the Court were to consider Alfaro-Garcia's new factual allegations,
they would fail to establish municipal liability on behalf of Henrico County under *Monell* and its
progeny.  Alfaro-Garcia provides nothing describing, much less plausibly alleging, how the
2013 Regional Cooperation agreement establishes *Monell* liability.  More problematically,
Alfaro-Garcia also fails to articulate any link between the "express policy" of cooperation and
the constitutional harms he suffered.  Accordingly, Alfaro-Garcia's speculative allegation
regarding a police department agreement does not establish that "an official policy or custom" of
Henrico County caused the "unconstitutional deprivation of the plaintiff's rights." *Brown*, 308 F.
Supp. 2d at 692.

13

b.   **Virginia Code § 9.1-180 Does Not Confer Upon Henrico County Policymaking Authority**

Seeking to demonstrate municipal liability under the "policymaker" category of *Monell*, Alfaro-Garcia next argues that Henrico County "ostensibly" has policymaking authority over the enforcement of immigration detainer requests because Henrico County belongs to the Henrico County CCJB. (Pl.'s Resp. to Henrico County Mot. Dismiss 8.) As Alfaro-Garcia highlights, under Virginia law, CCJBs have the responsibility to, among other things, "*[a]dvise* on the development and operation of local pretrial services," "*[a]ssist* community agencies and organizations in establishing and modifying programs and services for defendants," and "*[e]valuate* and *monitor* community programs and pretrial and local community-based probation services and facilities." Va. Code § 9.1-180 (emphases added). These responsibilities, Alfaro-Garcia contends, confer on Henrico County at least some authority over policymaking for enforcing immigration detainer requests because the CCJBs develop and establish pretrial services that supervise released parties when they are released on bail. This argument fails.

Alfaro-Garcia's policymaker theory of municipal liability based on Henrico County's membership in the Henrico County CCJB, like his claim regarding Henrico County's "express policy" of cooperation with ICE, relies on facts not in the Complaint. "When matters outside the pleadings are presented in a response to a 12(b)(6) motion, a district court has discretion to exclude the additional material." *Lawson*, 2012 WL 3242349, at *4. Alfaro-Garcia rests his argument on Henrico County's membership in the Henrico County CCJB, but wholly omits reference to the Henrico County CCJB (and Henrico County's membership) in the Complaint. The Court will exercise its discretion and exclude the new factual allegations raised in Alfaro-Garcia's response.

14

However, were this Court to assume that Alfaro-Garcia properly submitted his allegations before the Court, the Virginia Code section referenced by Alfaro-Garcia merely provides that CCJBs "advise" in the development and operation of local pretrial services, "assist" in the establishment of programs and services for defendants, and "evaluate and monitor" pretrial services and facilities. Va. Code § 9.1-180. Even given its call to have the CCJB "do all things necessary or convenient to carry out the responsibilities given in [Virginia Code § 9.1-180]," nothing in the statute suggests that CCJBs possess "final policymaking authority" over facilities such as Henrico County Jail West. *See Lytle*, 326 F.3d at 471.

To the contrary, courts have repeatedly held that, in Virginia, a county cannot be liable under § 1983 for the actions of its sheriff in the administration of its jail.[14] *See Grayson*, 195 F.3d at 697; *Strickler*, 989 F.2d at 1390; *Miller v. Parrish*, No. 3:12cv873, 2013 WL 791241, at *4 (E.D. Va. Mar. 4, 2013); *Sleeper*, 2012 WL 3555412, at *8. Alfaro-Garcia's reliance on the county's involvement in the Henrico County CCJB does not establish that "an official policy or custom" of Henrico County caused the "unconstitutional deprivation of the plaintiff's rights," when, even under his allegations, a court (not the CCJB) set bail and the John Does (not the CCJB) dissuaded him from posting it. *Brown*, 308 F. Supp. 2d at 692. Even presuming Sheriff Wade and the CCJB affect pretrial services in some way, nothing alleged suggests decision making control. Thus, were this Court to review the allegations Alfaro-Garcia submits, it could not find that Alfaro-Garcia established municipality liability under *Monell*'s policymaker category.

---

[14] Alfaro-Garcia acknowledges that Sheriff Wade is a policymaker. Alfaro-Garcia incorrectly suggests, however, a legal conclusion that Sheriff Wade performs such policymaking "on behalf of" Henrico County." (Pl.'s Resp. to Henrico County Mot. Dismiss 7.)

      c.      **Funding Henrico County Jail West Does Not Render Henrico County Liable for Operations Within the Jail**

In a final attempt to establish municipal liability, Alfaro-Garcia turns to the fourth

category under *Monell*, claiming that Henrico County funded a "persistent and widespread

practice" of enforcing ICE detainers, which amounted to "a custom or usage of the force of law."

(Pl.'s Resp. to Henrico County Mot. Dismiss 10.)  Again improperly injecting facts not in the

Complaint, Alfaro-Garcia proffers that Henrico County "honored 312 immigration detainer

requests" in fiscal years 2012 and 2013.  (*Id.* at 9.)  Alfaro-Garcia continues to suggest, in highly

speculative assertions, that the ICE detainers "cost the county and its taxpayers somewhere

around $2,080,728."  (*Id.*)  Not only does the Court reject this improper additional

"documentation," Alfaro-Garcia's claim would founder regardless.

Alfaro-Garcia argues that because Henrico County funds the operation of the sheriff's

office, the sheriff's enforcement of immigration detainers necessarily constitutes a policy of

Henrico County itself.  Courts in this District have rejected this argument.  In *Sleeper*, for

example, the court dismissed a claim against the City of Richmond that "assert[ed] liability

because of the Sheriff's policies and procedures in *operating the jail*."  2012 WL 3555412, at *8

(emphasis added).  Relying on *Strickler*, the court explained that "Virginia law 'at most obligates

[a] city to provide for the jail's physical plant, not to oversee the activities within.'"  *Id.*

(alteration in original) (quoting *Strickler*, 989 F.2d at 1390) (explaining that a municipality "may

be held liable" if it fails to provide for the jail's physical plant).  The *Sleeper* court continued:

"But if the violation results exclusively from a sheriff's neglect of his [or her] distinct duties

under Virginia law, then liability cannot be imposed on the municipality."  *Id.*  Heeding

*Strickler*'s guidance, the *Sleeper* court concluded:  "Although Virginia law may obligate the City

to provide for the physical upkeep of the Jail, it does not render the City liable for operations within—that is the *sole purview* of [the sheriff]." *Id.* (emphasis added).

Here, as in *Sleeper*, Alfaro-Garcia asserts a claim against a municipality for policies allegedly implemented "within" the local jail. *See id.* (citing *Strickler*, 989 F.2d at 1390). By merely claiming that "it is reasonable to conclude that Henrico County provides funds for the enforcement of 'a practice that is so persistent and widespread as to constitute a custom or usage with the force of law,'" Alfaro-Garcia would utterly fail to invoke *Monell*'s fourth basis for municipal liability. (Pl.'s Resp. to Henrico County Mot. Dismiss 10 (quoting *Lytle*, 326 F.3d at 471).) Accordingly, Alfaro-Garcia fails to state a claim for municipal liability upon which relief can be granted. The Court will dismiss Counts I and II against Henrico County.

### 2. The Court Will Dismiss Count III Because Henrico County Is Immune from Tort Liability

Finally, Alfaro-Garcia's brings his Count III False Imprisonment Claim against Henrico County, but that claim fails because Henrico County has immunity from tort liability. Under the common law, the Commonwealth of Virginia "was immune from liability for torts committed by its officers, employees[,] and agents." *Doud v. Commonwealth*, 717 S.E.2d 124, 125 (Va. 2011) (citing *VEPCO v. Hampton Redevelopment and Hous. Auth.*, 225 S.E.2d 364, 367 (Va. 1976)). "[T]his protection extends to municipalities in the exercise of their governmental functions." *Carter v. Morris*, 164 F.3d 215, 221 (4th Cir. 1999) (citing *Hoggard v. Richmond*, 200 S.E. 610, 611 (Va. 1939)).

The Supreme Court of Virginia has confirmed "that immunity continues to apply in the absence of a legislative waiver by which the Commonwealth consents to be sued in its own courts." *Id.* (citing *Gray v. Va. Sec'y of Transp.*, 662 S.E.2d 66, 70 (Va. 2008)). Although the Virginia Tort Claims Act waives sovereign immunity of the Commonwealth for certain claims, it

17

expressly disclaims any effort 'to remove or in any way diminish the sovereign immunity of any county, city, or town in the Commonwealth.'" *Carter*, 164 F.3d at 221 (quoting Va. Code § 8.01-195.3)). Sovereign immunity bars Alfaro-Garcia's false imprisonment claim against Henrico County.[15] The Court will dismiss Count III against Henrico County.

## B.     The Court Will Grant in Part and Deny in Part the Sheriff Wade Motion to Dismiss

Sheriff Wade has moved to dismiss all claims against him on the basis that either sovereign immunity, immunity under the Eleventh Amendment, or qualified immunity shields him from liability. Sheriff Wade also contends that Alfaro-Garcia has not alleged his Count I Due Process Claim or his Count II Unlawful Seizure Claim against Sheriff Wade in his individual, which is also called his personal, capacity. Wade also contends that the Complaint does not otherwise contain sufficient factual allegations to state a claim upon which relief can be granted. Finally, Sheriff Wade argues that Alfaro-Garcia fails to plausibly plead punitive damages. For the reasons that follow, the Court will grant in part and deny in part the Sheriff Wade Motion to Dismiss.

### 1.     The Court Will Dismiss Counts I and II Against Sheriff Wade in his Official and Supervisory Capacities and Counts 1.B and II.B in his Personal Capacity

The United States Court of Appeals for the Fourth Circuit recently commented on the three ways a state official may face liability in a § 1983 lawsuit:

---

[15] Alfaro-Garcia argues that the Court should refrain from making this determination because sovereign immunity constitutes an affirmative defense. In support, Alfaro-Garcia correctly avers that a Rule 12(b)(6) motion "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Manchanda v. Hays Worldwide, LLC*, No. 1:14cv1339, 2014 WL 7239095, at *2 (E.D. Va. Dec. 17, 2014) (citing *Edwards v. City of Goldsboro*, 178 F.3d 231, 243–44 (4th Cir.1999)). Even if sovereign immunity constitutes an affirmative defense as Alfaro-Garcia claims, "where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Id.* at *2 n.2. Here, the face of the Complaint plainly alleges that Henrico County is a county within the Commonwealth of Virginia.

A state official can be [liable] in a § 1983 suit in three ways:  in his [or her] personal capacity, his [or her] official capacity, or in a more limited way, his [or her] supervisory capacity.  For personal liability, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right. In an official-capacity suit, however, more is required:  the suit is treated as a suit against the entity, which must then be a moving force behind the deprivation; thus, the entity's policy or custom must have played a part in the violation of federal law.  Meanwhile, a supervisor can be liable where (1) he [or she] knew that his [or her] subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury; (2) his [or her] response showed deliberate indifference to or tacit authorization of the alleged offensive practices; and[,] (3) . . . there was an affirmative causal link between his [or her] inaction and the constitutional injury.

*King v. Rubenstein*, 825 F.3d 206, 223–24 (4th Cir. 2016) (citations omitted) (internal quotation marks omitted).

In the Complaint, Alfaro-Garcia does not delineate, in a discernible fashion, the theories upon which he seeks § 1983 recovery against Sheriff Wade.  In his Response to the Sheriff Wade Motion to Dismiss, Alfaro-Garcia captions the entirety of his argument with the following heading:  "Sheriff Wade is Liable in Both His Individual and Official Capacities Under § 1983." (Pl.'s Resp. to Wade Mot. Dismiss 3, ECF No. 10.)  Alfaro-Garcia, however, does not brief a theory of liability arising out of Sheriff Wade's official capacity.  Rather, Alfaro-Garcia presents a theory of supervisory liability.  That said, when advancing his theory of supervisory liability, Alfaro-Garcia uses language that typically would indicate a claim against a government official in a non-supervisory capacity.  *See, e.g., Lloyd v. Morgan*, No. 4:14cv107, 2015 WL 1288346, at *6 (E.D. Va. Mar. 20, 2015) ("[A] [s]heriff can be 'liable under Section 1983 if [he or she] causes such a deprivation through an official policy or custom.'" (quoting *Francis v. Woody*, No. 3:09cv325, 2009 WL 1442015, at *5–6 (E.D. Va. May 22, 2009)).  Because of the inconsistencies in his Complaint and Response, the Court will analyze the viability of all three theories of liability.

19

**a.     The Court Will Dismiss Counts I and II Against Sheriff Wade
in his Official Capacity**

At the outset, the Court must dismiss Alfaro-Garcia's Count I Due Process Claim and his

Count II Unlawful Seizure claim against Sheriff Wade to the extent those claims are brought

against Sheriff Wade in his official capacity. The Eleventh Amendment extends immunity to

state officials sued in their official capacities for monetary damages under § 1983. *See Kentucky*

*v. Graham*, 473 U.S. 159, 169–70 (1985); *see also Will v. Mich. Dep't of State Police*, 491 U.S.

58, 71 (1989) ("[A] suit against a state official in his or her official capacity is not a suit against

the official but rather is a suit against the official's office.").

This immunity extends to Sheriff Wade. "The sheriff of a jurisdiction is an officer

created by the Virginia Constitution." *Francis*, 2009 WL 1442015, at *4 (citing *Hilton v.*

*Amburgey*, 96 S.E.2d 151, 152 (Va. 1957)). "[I]n Virginia, a lawsuit against a sheriff in his [or

her] official capacity is actually a lawsuit against the [Commonwealth]." *Id.* (citing *McCoy v.*

*Chesapeake Corr. Ctr.*, 788 F. Supp. 890, 893 (E.D. Va. 1992) ("In Virginia, sheriffs are state

officials."); *Harris v. Hayter*, 970 F. Supp. 500, 502 (W.D. Va. 1997) ("In Virginia, a suit against

a sheriff in his official capacity is a suit against a state.")). To the extent Alfaro-Garcia brings

§ 1983 claims against Sheriff Wade in his official capacity, Sheriff Wade has immunity under

the Eleventh Amendment, and Counts I and II fail.

**b.     The Court Will Dismiss Counts I and II Against Sheriff Wade
in a Supervisory Capacity**

The Court also must dismiss Counts I and II against Sheriff Wade to the extent Alfaro-

Garcia has brought those claims against Sheriff Wade as a supervisor. The Fourth Circuit has

articulated three elements necessary for establishing supervisory liability under § 1983:

> (1) that the supervisor had actual or constructive knowledge that his [or her]
> subordinate was engaged in conduct that posed "a pervasive and unreasonable
> risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's

20

response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices"; and[,] (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (citations omitted). In order "[t]o satisfy the requirements of the first element, a plaintiff must show the following: (1) the supervisor's knowledge of (2) conduct engaged in by a subordinate (3) where the conduct poses a pervasive and unreasonable risk of constitutional injury to the plaintiff." *Id.* (citing *Slakan v. Porter*, 737 F.2d 368, 373 (4th Cir. 1984)). "Establishing a 'pervasive' and 'unreasonable' risk of harm requires evidence that the conduct is widespread, or at least has been used on several different occasions and that the conduct engaged in by the subordinate poses an unreasonable risk of harm of constitutional injury." *Id.* (citing *Slakan*, 737 F.2d at 373–74).

With respect to the second prong, a plaintiff may show "deliberate indifference by demonstrating a supervisor's continued inaction in the face of documented widespread abuses." *Id.* (citations and internal quotations marks omitted). A plaintiff, however, cannot satisfy the pleading standard "'by pointing to a single incident or isolated incidents, for a supervisor cannot be expected to promulgate rules and procedures covering every conceivable occurrence within the area of his [or her] responsibilities.'" *Id.* (quoting *Slakan*, 737 F.2d at 372–73).

Given that backdrop, the Complaint falls short of stating a plausible claim for supervisory liability in at least two ways. First, Alfaro-Garcia fails to plausibly allege specific facts that Sheriff Wade had actual or constructive knowledge of the behavior of the John Does who directly violated Alfaro-Garcia's constitutional rights. *See Iqbal*, 556 U.S. at 676 ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."). Absent such allegations, a supervisory claim fails.

21

Second, Alfaro-Garcia has failed to plead facts sufficient to show that Sheriff Wade acted with deliberate indifference. *Shaw*, 13 F.3d at 799 (a party may establish deliberate indifference by "demonstrating a supervisor's continued inaction in the face of documented widespread abuses" (quoting *Slakan*, 737 F.2d at 373)). "[I]n establishing 'deliberate indifference' . . ., a plaintiff '[o]rdinarily . . . cannot satisfy his [or her] burden of proof by pointing to a single incident or isolated incidents . . . for a supervisor cannot be expected . . . to guard against the deliberate criminal acts of his [or her] properly trained employees when he [or she] has no basis upon which to anticipate the misconduct.'" *Moore v. Greenwood Sch. Dist. No. 52*, 195 F. App'x 140, 144 (4th Cir. 2006) (per curiam) (quoting *Randall v. Prince George's Cty.*, 302 F.3d 188, 206 (4th Cir. 2002)). Alfaro-Garcia's Complaint alleges no prior misconduct or documented widespread abuses.[16] Thus, to the extent Alfaro-Garcia brings § 1983 claims against Sheriff Wade as a supervisor, Alfaro-Garcia fails to state a claim upon which relief can be granted. The Court will dismiss Counts I and II against Sheriff Wade to the extent Alfaro-Garcia alleges supervisory liability.

---

[16] In his response to the Sheriff Wade Motion to Dismiss, Alfaro-Garcia improperly attempts to supplement the allegations of the Complaint by citing Sheriff Wade's government-website, which purportedly provides a link "to the Victim Notification Program for Immigration and Customs Enforcement page." (Pl.'s Resp. to Wade Mot. Dismiss 4, ECF No. 10.) According to Alfaro-Garcia, the link simply "explains the immigration detainer process." (*Id.*) Alfaro-Garcia also alleges in his response that "the Henrico County Jail received over 300 ICE Detainers in 2012 and 2013 alone." (*Id.*)

Alfaro-Garcia posits that the website and ICE detainer statistics suffice to establish that Sheriff Wade *knew* of a "pervasive and unreasonable risk" posed to Alfaro-Garcia's constitutional rights. Notwithstanding Alfaro-Garcia's failure to include these allegations in the Complaint, his argument fails because the mere existence of ICE detainers does not establish that Sheriff Wade knew of conduct that necessarily risked *constitutional harm*.

c.     **The Court Will Dismiss Counts I.B and II.B Against Sheriff Wade in his Personal Capacity Based on Qualified Immunity**

Finally, the Court will dismiss in part Alfaro-Garcia's constitutional claims against Sheriff Wade in his personal capacity because qualified immunity shields Sheriff Wade from liability to the extent the claims concern Alfaro-Garcia's detention pursuant to 8 C.F.R. § 287.7.[17] Before addressing qualified immunity, the Court will assess Sheriff Wade's argument that Alfaro-Garcia fails to allege that Sheriff Wade personally caused the alleged deprivations of Alfaro-Garcia's rights under the Fourteenth and Fourth Amendments.

Generally, to establish § 1983 liability against an officer in his or her personal capacity, "a plaintiff must affirmatively show that the 'official charged *acted personally* in the deprivation of the plaintiff's rights.'" *Oliver v. Powell*, 250 F. Supp. 2d 593, 598 (E.D. Va. 2002) (emphasis added) (quoting *Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985)). Alfaro-Garcia "may not

---

[17] 8 C.F.R. § 287.7 provides, in relevant part:

(a) Detainers in general. Detainers are issued pursuant to sections 236 and 287 of the Act and this chapter 1. Any authorized immigration officer may at any time issue a Form I–247, Immigration Detainer–Notice of Action, to any other Federal, State, or local law enforcement agency. A detainer serves to advise another law enforcement agency that the Department seeks custody of an alien presently in the custody of that agency, for the purpose of arresting and removing the alien. The detainer is a request that such agency advise the Department, prior to release of the alien, in order for the Department to arrange to assume custody, in situations when gaining immediate physical custody is either impracticable or impossible.

. . . .

(d) Temporary detention at Department [of Homeland Security] request. Upon a determination by the Department [of Homeland Security] to issue a detainer for an alien not otherwise detained by a criminal justice agency, such agency *shall* maintain custody of the alien for a period not to exceed 48 hours, excluding Saturdays, Sundays, and holidays in order to permit assumption of custody by the Department.

8 C.F.R. § 287.7(a),(d).

avail himself of the doctrine of respondeat superior, as [the] doctrine is inapplicable to § 1983 claims." *Id.* In order for the action to proceed against Sheriff Wade, he "must have had personal knowledge of and involvement in the alleged violations of [Alfaro-Garcia's] constitutional rights." *Id.* As relevant here, "a [s]heriff can be 'liable under Section 1983 if [he or she] causes such a deprivation through an official policy or custom.'" *Lloyd*, 2015 WL 1288346, at *6 (quoting *Francis*, 2009 WL 1442015, at *5–6).[18] In sum, Sheriff Wade can be liable if he implemented an official policy or custom that caused the deprivation of Alfaro-Garcia's Fourteenth and Fourth Amendment rights.

While the Complaint omits any factual references to Sheriff Wade's personal involvement in Alfaro-Garcia's detention, it repeatedly states that the Defendants implemented "a policy, practice, or custom" of: (1) misleading inmates about the possibility of release by posting bail; (2) detaining inmates for 48 hours beyond the time they would normally be released based solely on the immigration detainer; and, (3) detaining inmates longer than 48 hours. (Compl. ¶¶ 25–27; *see also* Pl.'s Resp. to Wade Mot. Dismiss 2, 5.) The Complaint also alleges that Sheriff Wade "has custody and control of all persons confined in Henrico County Jails and is responsible for the day-to-day operations of the Henrico County Jail West." (Compl. ¶ 11.) Drawing all reasonable inferences in Alfaro-Garcia's favor, the Court finds that Alfaro-Garcia plausibly alleges that the practices undertaken at Henrico County Jail West were policies implemented by Sheriff Wade himself. Consequently, Counts I and II allege § 1983 claims against Sheriff Wade in his personal capacity upon which relief can be granted. In light of

---

[18] "An official policy or custom . . . 'need not derive from municipal ordinances. . . . [I]t may also be found in formal or informal ad hoc 'policy' choices or decisions of municipal officials authorized to make and implement municipal policy.'" *Francis*, 2009 WL 1442015, at *5 (quoting *Kirby v. Elizabeth City, N.C.*, 380 F.3d 777, 787 (4th Cir.), *aff'd on reh'g*, 388 F.3d 440 (4th Cir. 2004)).

Sheriff Wade's assertion of qualified immunity,[19] however, the Court's analysis does not end here.

### i.   Qualified Immunity Standard

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). This protection "applies regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on questions of law and fact.'" *Id.* (citation omitted). Qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments." *Messerschmidt v. Millender*, 132 S.Ct. 1235, 1244 (2012) (citation omitted). This allowance for reasonable mistakes balances "two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson*, 555 U.S. at 231.

To survive a motion to dismiss that raises qualified immunity, Alfaro-Garcia must (1) allege sufficient facts to "'make out a violation of a constitutional right,'" (2) that "'was clearly established at the time of'" the alleged violation. *M.C. ex rel. Crawford v. Amrhein*, 598 F. App'x 143, 146 (4th Cir. 2015) (quoting *Pearson*, 555 U.S. at 232). "The right at issue must be defined 'at a high level of particularity.'" *Id.* (quoting *Bland v. Roberts*, 730 F.3d 368,

---

[19] Alfaro-Garcia argues that, because qualified immunity constitutes an affirmative defense, it cannot be raised on a Rule 12(b)(6) motion. The Fourth Circuit has squarely rejected this position. *See Jenkins v. Medford*, 119 F.3d 1156, 1159 (4th Cir. 1997) (finding that district court erred in refusing to rule on qualified immunity because defendant had not answered or asserted defense; and holding that "[q]ualified immunity may be raised in a motion to dismiss").

391 (4th Cir. 2013)). "'This is not to say that an official action is protected by qualified

immunity unless the very action in question has previously been held unlawful, but it is to say

that in the light of pre-existing law the unlawfulness must be apparent.'" *Id.* (quoting *Anderson*

*v. Creighton*, 483 U.S. 635, 640 (1987)). "To be clearly established, '[t]he contours of the right

must be sufficiently clear that a reasonable official would understand that what he [or she] is

doing violates that right.'" *Id.* at 147 (quoting *Anderson*, 483 U.S. at 640). "In determining the

availability of qualified immunity, the point of reference is the time at which the action or

inaction occurred." *Shaw*, 13 F.3d at 801 (citing *Harlow*, 457 U.S. at 818).

### ii.    Qualified Immunity Shields Sheriff Wade From Liability on Counts I.B and II.B

The right at issue here is whether, following a jail's receipt of an immigration detainer

request pursuant to 8 C.F.R. § 287.7, an inmate has rights under the Fourteenth and Fourth

Amendments not to be detained beyond the time at which he or she would normally be

released.[20] Sheriff Wade contends that this right, if violated, was not clearly established at the

time of Alfaro-Garcia's detention.[21] Sheriff Wade bases his argument on the plain language of

8 C.F.R. § 287.7, which, as noted previously, provides:

> (a) Detainers in general.  Detainers are issued pursuant to sections 236 and 287 of
> the Act and this chapter 1.  Any authorized immigration officer may at any time
> issue a Form I–247, Immigration Detainer–Notice of Action, to any other Federal,
> State, or local law enforcement agency.  A detainer serves to advise another law
> enforcement agency that the Department seeks custody of an alien presently in the
> custody of that agency, for the purpose of arresting and removing the alien.  The

---

[20] The Complaint also alleges that the Defendants have a "policy, practice, or custom" of misleading inmates about the possibility of release by posting bail.  (Compl. ¶ 25.)  The Sheriff Wade Motion to Dismiss does not address qualified immunity on Alfaro-Garcia's claims with respect to this allegation.  Counts I.A and II.A remain in the Complaint as unchallenged.

[21] Courts are no longer required to decide whether a constitutional right has been violated before deciding whether that right was clearly established at the time of the alleged violation. *Pearson*, 555 U.S. at 236.  Thus, the Court will first determine whether the allegedly violated constitutional rights have been clearly established.

detainer is a request that such agency advise the Department, prior to release of the alien, in order for the Department to arrange to assume custody, in situations when gaining immediate physical custody is either impracticable or impossible.

. . . .

(d) Temporary detention at Department [of Homeland Security] request.  Upon a determination by the Department [of Homeland Security] to issue a detainer for an alien not otherwise detained by a criminal justice agency, such agency ***shall*** maintain custody of the alien for a period not to exceed 48 hours, excluding Saturdays, Sundays, and holidays in order to permit assumption of custody by the Department.

8 C.F.R. § 287.7(a), (d) (emphasis added).  In view of this regulation, Sheriff Wade argues that, to the extent he took any action that deprived Alfaro-Garcia of his constitutional rights, such action involved a reasonable interpretation of the federal regulation, *i.e.*, that federal law *required* the detention of Alfaro-Garcia "for a period not to exceed 48 hours" because he was no longer "otherwise detained by a criminal justice agency." *Id.* § 287.7(d).

In his opposition, Alfaro-Garcia primarily relies on two non-binding cases that find detentions under § 287.7 non-mandatory.  *See Galarza v. Szalczyk*, 745 F.3d 634, 645 (3d Cir. 2014) ("[W]e conclude that 8 C.F.R. § 287.7 does not compel state or local [law enforcement agencies] to detain suspected aliens subject to removal pending release to immigration officials. Section 287.7 merely authorizes the issuance of detainers as requests to local [law enforcement agencies]."); *Miranda-Olivares v. Clackamas Cty.*, No. 3:12cv02317, 2014 WL 1414305, at *8 (D. Or. April 11, 2014) ("[T]his court concludes that 8 C.F.R. § 287.7 does not require [law enforcement agencies] to detain suspected aliens upon receipt of a Form I-247 from ICE and that the Jail was at liberty to refuse ICE's request to detain [the defendant] if that detention violated her constitutional rights.").  Alfaro-Garcia also references a 2015 advisory opinion of Mark Herring, Attorney General of Virginia, in which Attorney General Herring explained that "an

27

ICE detainer is merely a request." *See* Legality of ICE Detainer Requests, 14-067 Op. Va. Att'y Gen. (2015).[22]

Again, Alfaro-Garcia's argument misses the mark. Both of these non-binding cases were published in the year *following* Alfaro-Garcia's detention and release. Similarly, the Virginia Attorney General issued his opinion in 2015, approximately eighteen months after Alfaro-Garcia's release. The authorities cited by Alfaro-Garcia do not support a finding that the unlawfulness of Sheriff Wade's actions was established, much less clearly so, at the time the conduct occurred. To the contrary, the cases discussed by the *Miranda-Olivares* court make plain that, at best, the law had been unsettled and ambiguous. *Miranda-Olivares*, 2014 WL 1414305, at *5 (citing federal district courts in California, Pennsylvania, South Carolina, and Tennessee that found the term "shall" in § 287.7 imposed a mandatory directive). In fact, at the time of Alfaro-Garcia's detention, the lower court in *Galarza* had found that the language in § 287.7 imposed a mandatory obligation to detain and upheld the constitutionality of the county's practice in doing so. *Galarza v. Szalczyk*, No. 10cv06815, 2012 WL 1080020, at *1 (E.D. Pa. Mar. 30, 2012), *rev'd and remanded*, 745 F.3d 634 (3d Cir. 2014).

Given this context, the Court finds that any policy, practice, or custom of Sheriff Wade to detain inmates in for 48 hours after resolution of the inmate's criminal case did not contravene clearly established constitutional law. *See Pearson*, 555 U.S. at 245 ("[I]f judges . . . disagree on a constitutional question, it is unfair to subject police to money damages for picking the losing side of the controversy." (quoting *Wilson v. Layne*, 526 U.S. 603, 618 (1999)); *see also Amrhein*, 598 F. App'x at 148 ("As we have repeatedly emphasized, '[o]fficials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines.'" (quoting *Maciariello v.*

---

[22] Alfaro-Garcia attached the Attorney General Opinion to his Response to the Henrico County Motion to Dismiss. (Resp. to Henrico County Mot. Dismiss Ex. F, ECF No. 9–6.)

*Sumner*, 973 F.2d 295, 298 (4th Cir. 1992)). The Court will dismiss Counts I.B and II.B against Sheriff Wade in his personal capacity.

However, Sheriff Wade's qualified immunity argument does not defeat Counts I.C and II.C because those claims concern a "policy, practice, or custom" of detaining Alfaro-Garcia *beyond* the 48-hour period provided in § 287.7. Sheriff Wade could not reasonably suggest (and does not suggest) that a federal regulation that seemingly caps an inmate's detention at 48 hours provides a basis to hold an inmate 14 to 15 hours beyond that period.

### 2.   **Sheriff Wade Is Not Absolutely Immune from Tort Liability**

With respect to Count III, Sheriff Wade argues that, as a constitutional officer, Virginia law grants him absolute immunity from tort liability. This contention overstates the scope of immunity afforded under Virginia law. In Virginia, "as a constitutional officer, [the sheriff] is generally afforded [sovereign] immunity based on his [or her] proximity to [the] highest levels of state government." *Lloyd*, 2015 WL 1288346, at *12. "Unless a constitutional officer's act or omission amounts to gross negligence or exceeds the scope of his [or her] authority or discretion, the officer is protected." *Hedrick v. Roberts*, 183 F. Supp. 2d 814, 824 (E.D. Va. 2001) (citing *James v. Jane*, 282 S.E.2d 864, 869 (Va. 1980)).

Sheriff Wade is undoubtedly a constitutional officer. The Complaint, however, does not allege a claim for simple negligence, but false imprisonment—an *intentional* tort. As such, sovereign immunity does not protect Sheriff Wade to the extent he acted intentionally. *See Tomlin v. McKenzie*, 468 S.E.2d 882, 884 (Va. 1996) ("[W]here sovereign immunity is claimed by an agent of the state, rather than by the state as an entity, it will not be extended to acts which constitute a wanton and intentional deviation from the duties the agent has been assigned to undertake."); *see also Brown v. Mitchell*, 327 F. Supp. 2d 615, 646 n.59 (E.D. Va. 2004) (holding that sheriff's protection from suit was not absolute and that she was insulated only from

29

liability for simple negligence). The Court will deny the Sheriff Wade Motion to Dismiss to the extent it seeks dismissal of Count III.

### 3. Alfaro-Garcia States a Claim Upon Which Punitive Damages Could Be Recoverable

Finally, the Court will deny the Sheriff Wade Motion to Dismiss to the extent it seeks dismissal of Alfaro-Garcia's prayer for punitive damages. "As an initial matter, 'punitive damages is not a "cause of action" subject to dismissal under Rule 12(b)(6).'" *Charles v. Front Royal Volunteer Fire & Rescue Dep't, Inc.*, 21 F. Supp. 3d 620, 631 (W.D. Va. 2014) (quoting *Rathbone v. Haywood Cty.*, No. 1:08cv117, 2008 WL 2789770, at *1 (W.D.N.C. July 17, 2008)).[23] Thus, "'a Rule 12(b)(6) motion is [generally] a premature means to attack a request for punitive damages, at least where such damages are theoretically recoverable under the applicable law.'" *Hamilton v. Boddie–Noell Enterprises, Inc.*, No. 2:14cv51, 2015 WL 751492, at *3 (W.D. Va. Feb. 23, 2015) (quoting *Debord v. Grasham*, No. 1:14cv39, 2014 WL 3734320, at *1 (W.D. Va. July 28, 2014)).

Here, Counts 1.A, I.C, II.A, II.C, and III against Sheriff Wade in his personal capacity survive the Sheriff Wade Motion to Dismiss. Because plaintiffs may recover punitive damages in certain § 1983 cases against individual defendants, dismissal of the punitive damages prayer on Counts I.A, I.C, II.A, and II.C is not warranted at this stage. *See Washington v. Jurgens*, No. 3:16cv184, 2016 WL 3661320, at *10 (E.D. Va. July 1, 2016) ("The touchstone for punitive damages liability in [§] 1983 cases is whether the named [d]efendant officers acted with malice

---

[23] In fact, "[u]nder Virginia law, there is no cognizable cause of action for . . . punitive damages." *Augustin v. SecTek, Inc.*, 807 F. Supp. 2d 519, 526 (E.D. Va. 2011) (citing *Albright v. Burke & Herbert Bank & Trust Co.*, 457 S.E.2d 776, 778 (Va. 1995)); *see also Eslami v. Glob. One Commc'ns, Inc.*, 48 Va. Cir. 17, 25 (1999) ("Under Virginia law, punitive damages are not a cause of action, but a remedy. When the plaintiff pleads and proves an intentional tort, Virginia law permits the trier of fact to award punitive damages."). Here, Alfaro-Garcia does not plead punitive damages as a cause of action, but as a remedy.

or in callous disregard of [p]laintiff's federally-protected rights." (citing *Smith v. Wade*, 461 U.S. 30, 51–52 (1983); *Robles v. Prince George's Cty.*, 302 F.3d 262, 273 (4th Cir. 2002)). With respect to Count III, because "punitive damages are categorically available in tort cases such as this brought under Virginia law, dismissal of the punitive damages claim is not warranted at this point in the case." *Blankenship v. Quality Transp., LLC*, No. 1:15cv19, 2015 WL 4400196, at *2 (W.D. Va. July 17, 2015). The Court will deny in part the Sheriff Wade Motion to Dismiss to the extent it seeks dismissal of Alfaro-Garcia's prayer for punitive damages. At this stage, punitive damages remain a possible remedy in Counts I.A, I.C, II.A, II.C, and III against Sheriff Wade in his personal capacity.

## IV. Conclusion

For the foregoing reasons, the Court will: (1) deny as moot Alfaro-Garcia's Motion to Strike; (2) deny Sheriff Wade's Motion for a Hearing on Motion to Dismiss; (3) deny Alfaro-Garcia's Motion for a Hearing on Defendant Henrico County's Motion to Dismiss; (4) grant the Henrico County Motion to Dismiss; (5) grant the Sheriff Wade Motion to Dismiss to the extent it seeks dismissal of Counts I and II against Sheriff Wade in his official and supervisory capacities; (6) deny the Sheriff Wade Motion to Dismiss on Counts I.A and II.A against Sheriff Wade in his personal capacity; (7) grant the Sheriff Wade Motion to Dismiss on Counts I.B and II.B against Sheriff Wade in his personal capacity; (8) deny the Sheriff Wade Motion to Dismiss on Counts I.C and II.C against Sheriff Wade in his personal capacity; (9) deny the Sheriff Wade Motion to Dismiss on Count III; and, (10) deny the Sheriff Wade Motion to Dismiss to the extent it seeks dismissal of Alfaro-Garcia's request for punitive damages in Counts I.A, I.C, II.A, II.C, and III against Sheriff Wade in his personal capacity.

The Court will order Sheriff Wade to file an answer, through counsel, by October 10, 2016, in accordance with the Federal Rules of Civil Procedure.

An appropriate order shall issue.

/s/

M. Hannah Lauck
United States District Judge

Richmond, Virginia
Date: 9/26/16